744 A.2d 1261

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Reuben STEVENSON, Appellant.**

**In the Interest of R.A., A Minor.**

**Appeal of R.A., A Minor.**

Supreme Court of Pennsylvania.

Argued April 28, 1999.

Decided Jan. 20, 2000.

346

William E. Ruane, Asst. Public Defender, Nicholas G. Theodore, Public Defender, Office of the Public Defender, for Reuben Stevenson.

A. Sheldon Kovach, Michelle P. Hutton, Asst. Dist. Attys., Patrick L. Meehan, Dist. Atty., Office of the Dist. Atty., for Com. in 192 M.D. 1998.

Bradley A. Winnick, Asst. Public Defender, George F. Schultz, Public Defender, Office of the Public Defender, for R.A., a Minor.

Christopher Marzzacco, Asst. Dist. Atty., Eric R. Augustine, Deputy Dist. Atty., John F. Cherry, Dist. Atty., Office of the Dist. Atty., for Com. in 191 M.D. 1998.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

NIGRO, Justice.

In this consolidated appeal, Appellants Reuben Stevenson and R.A., a minor, contend that the Superior Court improperly upheld the trial courts' denial of their motions to suppress physical evidence obtained pursuant to a stop and frisk. We agree and therefore, reverse.

When reviewing the ruling of a suppression court, we must determine whether the record supports that court's factual findings. As long as the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Commonwealth v. Cortez,* 507 Pa. 529, 532, 491 A.2d 111, 112 (1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985). With this standard in mind, the relevant facts of each case are set forth below.

## *Commonwealth v. Stevenson*

At approximately 12:30 a.m. on October 17, 1995, Officer Robert Birney of the Parkside Borough Police Department was on routine patrol when he saw a vehicle operated by Appellant Reuben Stevenson. Officer Birney observed the car pull into a town house complex and saw Stevenson enter a residence which had been the subject of numerous complaints involving suspected drug activity. The officer continued his patrol, but a short while later, he noticed that Stevenson had returned to his car and was exiting the complex.

After detecting a broken rear taillight on Stevenson's vehicle, Officer Birney pulled Stevenson over. He approached Stevenson's car and requested his driver's license and registration. Stevenson did not have the vehicle's registration and

admitted to the officer that he did not own the car and that his driving privileges had been suspended. Officer Birney testified that during his inquiry, Stevenson appeared nervous, began to fidget and repeatedly reached towards the glove compartment. Concerned for his safety, the officer ordered Stevenson out of the vehicle and conducted a pat-down search. During the pat-down search, Officer Birney felt three hard packages of folded paper or cardboard in Stevenson's pants pocket and testified that he knew or believed that the packages contained cocaine. Accordingly, Officer Birney retrieved the packages, which contained a substance that appeared, and was later confirmed, to be cocaine. Stevenson was placed under arrest.

Because Stevenson did not own the vehicle and did not have a valid driver's license, and because the vehicle was blocking a lane of traffic, Officer Birney contacted a tow truck driver to take the vehicle to the yard utilized by the Parkside Police Department. After the tow truck driver arrived, the officer conducted a search of the trunk of the car and discovered an open Pampers bag which contained additional cocaine.[1]

Stevenson was charged with various drug-related offenses as well as motor vehicle violations. Prior to trial, he filed a motion to suppress the drugs seized from his person and the vehicle's trunk as well as post-arrest statements made to the police. After a hearing, the trial court granted the motion to suppress Stevenson's statements, but refused to suppress the physical evidence. Following a bench trial, Stevenson was found guilty of possession and possession with intent to deliver cocaine, use of or possession with intent to use drug paraphernalia, operating a motor vehicle without a driver's license, and driving in violation of general lighting requirements. On

---

1. Prior to contacting the tow truck driver, Officer Birney called and requested Officer Andrew Timlin of the Brookhaven Police Department to come to the scene and conduct a canine drug sniff search of the vehicle. Upon Officer Timlin's arrival with his canine partner, the dog exhibited a positive response in the front seat and trunk areas of the car. The officers searched the front portion of the car, discovering no weapons or other contraband, but did not search the trunk because Stevenson did not have a key to open it. Once the tow truck driver arrived at the scene, he popped the trunk with a screwdriver.

appeal, the Superior Court affirmed, finding that the trial court had properly denied Stevenson's motion to suppress the drugs on his person because the drugs had properly been recovered pursuant to the plain feel doctrine.

*In the Interest of R.A.*

On February 27, 1997, Pennsylvania State Trooper Jerry Oberdorf observed a car with a cracked windshield driving ahead of his patrol car on Cameron Street in Harrisburg. There were three occupants in the car, including the driver. Appellant R.A., a minor, was sitting in the back seat of the car. Trooper Oberdorf pulled the car over. After stopping in a service station parking lot, the driver of the stopped car jumped out of the car and began moving away from it. When the trooper ordered the driver to return to his vehicle, the driver, who appeared nervous, began speaking incoherently. Trooper Oberdorf ordered him to stay put and proceeded to pat the driver down for weapons. He found no weapons or contraband.

During his pat-down search of the driver, the trooper ordered the two passengers in the car to put their hands up so he could see them. Initially, the passengers complied, but later began to fidget and move their hands around inside the vehicle. Fearing that he might lose control of the situation, Trooper Oberdorf called for backup.

Following the arrival of several other officers, R.A. and the other passenger were ordered out of the car. R.A. complied with the command, but appeared very nervous, and continued to move his hands about and around his jacket. Based on R.A.'s nervousness and suspicious movements, Trooper Oberdorf patted R.A. down. During the pat-down, Oberdorf felt what appeared to be a cigarette or cigar and something similar to a pill bottle in the liner of R.A.'s jacket. Upon removing the items and visually inspecting them, Oberdorf determined that the cigar was hollowed out and contained marijuana, and that the pill bottle, which had a pop off lid, contained crack cocaine. R.A. was arrested and charged with

possession with intent to deliver cocaine and possession of a small amount of marijuana.

R.A. filed a motion to suppress the drugs. The trial court denied the motion, finding that Trooper Oberdorf had reasonable suspicion to conduct a stop and frisk of R.A. and had properly seized the cigar and pill bottle under the plain feel exception to the warrant requirement. R.A. was adjudicated delinquent. On appeal, the Superior Court affirmed.[2] Judge Johnson dissented, disagreeing with the majority's conclusion that the cigar and pill box were validly seized pursuant to the plain feel doctrine.

We granted allocatur in both of the instant cases to determine whether the Superior Court erred in finding that the drugs were properly seized from Appellants under the plain feel exception to the warrant requirement.

 It is well-established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). Moreover, if the officer has a reasonable suspicion, based on specific and articulable facts, that the detained individual may be armed and dangerous, the officer may then conduct a frisk of the individual's outer garments for weapons. *Id.* at 24, 88 S.Ct. at 1881. Since the sole justification for a *Terry* search is the protection of the officer or others nearby, such a protective search must be strictly "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 26, 88 S.Ct. at 1882. Thus, the purpose of this limited search is not to discover evidence, but to allow the officer to pursue his investigation without fear of violence. *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).[3]

**2.** The Superior Court adopted the opinion of the trial court. Judge Stevens concurred.

**3.** The question of whether the officers in the instant cases had reasonable suspicion to stop and frisk Appellants is not at issue in this appeal.

■■■ Recently, however, the United States Supreme Court considered the question of whether an officer may also properly seize non-threatening contraband "plainly felt" during a *Terry* frisk for weapons. *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Answering the question in the affirmative, the *Dickerson* Court adopted the so-called plain feel doctrine and held that a police officer may seize non-threatening contraband detected through the officer's sense of touch during a *Terry* frisk if the officer is lawfully in a position to detect the presence of contraband, the incriminating nature of the contraband is immediately apparent from its tactile impression and the officer has a lawful right of access to the object. *Dickerson,* 508 U.S. at 373–75, 113 S.Ct. at 2136–37. As *Dickerson* makes clear, the plain feel doctrine is only applicable where the officer conducting the frisk feels an object whose mass or contour makes its criminal character immediately apparent. *Id.* at 375, 113 S.Ct. at 2137; *Commonwealth v. E.M./Hall,* 558 Pa. 16, 735 A.2d 654, 663 (1999). Immediately apparent means that the officer readily perceives, without further exploration or searching, that what he is feeling is contraband. *Id.* If, after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the immediately apparent requirement has not been met and the plain feel doctrine cannot justify the seizure of the object. *Id.; see also Commonwealth v. Graham,* 554 Pa. 472, 485–86, 721 A.2d 1075, 1082 (1998) (opinion announcing the judgment of the Court) (if officer needs to conduct further search to determine incriminating character of object, seizure of object is not justified under plain feel doctrine).

Applying these principles to the instant case, it is clear that the officers did not "plainly feel" contraband when frisking Appellants. In *In the Interest of R.A.,* Trooper Oberdorf testified that upon patting down R.A., he felt what appeared to be a "cigarette or a cigar" and a "similar object to a pill bottle" in the liner of R.A.'s jacket. N.T., 6/11/97, at 9, 15. He further testified that, in his experience as a police officer, he had previously seen crack cocaine packaged within pill

bottles. *Id.* at 10. At no time, however, did Trooper Oberdorf testify that he felt the contents of the objects or that it was immediately apparent to him that what he was feeling was contraband. In fact, when asked whether he had felt any narcotics or any other objects that he could identify as contraband, Trooper Oberdorf responded that he had not. *Id.* at 16. Thus, the record establishes that although Trooper Oberdorf felt what he described as a cigar or cigarette and a pill bottle during his frisk of R.A., he did not plainly feel, as *Dickerson* requires, objects that were immediately apparent to him *as contraband.*

The lower courts found, however, that because Trooper Oberdorf was experienced in drug enforcement and had previously encountered instances in which narcotics were contained in pill bottles and cigars, it was immediately apparent to him that these objects were contraband. We disagree.

*Dickerson* carefully circumscribes the application of the plain feel doctrine to situations where an officer, while lawfully conducting a *Terry* frisk for weapons, plainly feels an object that is immediately apparent to him as contraband. In *Commonwealth v. Fink*, a case which examined the immediately apparent requirement of the plain feel doctrine, the arresting officer testified that during a pat-down search of the defendant he felt an object resembling "a regular smoking pipe without the stem." 700 A.2d 447, 450 (Pa.Super.1997), *appeal denied*, 552 Pa. 694, 716 A.2d 1247 (1998). The officer also testified that, in his experience, he had seen pipes of the size and shape felt in the defendant's pocket used for smoking marijuana. After removing the object from the defendant's pocket, the officer found it to be a marijuana pipe. In finding that the search was not justified under the plain feel doctrine, the *Fink* court concluded that the illegal nature of the object was not immediately apparent to the officer because pipes, although sometimes used to smoke marijuana, can also be used to smoke legal substances. *Id.* at 451.

Similarly, in *Commonwealth v. Stackfield*, 438 Pa.Super. 88, 651 A.2d 558, 562 (1994), the Superior Court held that an officer's testimony that he felt what he knew "was packaging

material [for drugs] or zip-lock baggies" in the defendant's pocket during a *Terry* frisk did not support a conclusion that the officer felt an item that he immediately recognized as contraband. The court stated:

A zip-lock baggie is not per-se contraband, although material contained in a zip-lock baggie may well be.... The record supports a factual finding that the officer felt a mass that he recognized as a baggie; it does not support a factual finding that the officer felt what he immediately recognized as contraband. Sight unseen, the contents of the baggies that the officer felt in appellant's pants pockets could as easily have contained the remains of appellant's lunch as contraband.

*Stackfield,* 651 A.2d at 562.

We agree with the *Fink* and *Stackfield* courts that the immediately apparent requirement of the plain feel doctrine is not met when an officer conducting a *Terry* frisk merely feels and recognizes by touch an object that could be used to hold either legal or illegal substances, even when the officer has previously seen others use that object to carry or ingest drugs. To find otherwise would be to ignore *Dickerson's* mandate that the plain feel doctrine is a narrow exception to the warrant requirement that only applies when an officer conducting a lawful *Terry* frisk feels an object whose mass or contour makes its identity as contraband immediately apparent. *See Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137 (only where officer "feels an object whose mass or contour makes its identity immediately apparent has there been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons"); *Graham,* 554 Pa. at 485, 721 A.2d at 1082 (plain feel doctrine is extremely narrow exception to warrant requirement that is only applicable where, based solely on officer's pat-down of suspect's outer clothing, incriminating nature of contraband is immediately apparent); *Commonwealth v. Smith,* 454 Pa.Super. 489, 685 A.2d 1030, 1033 (1996), *appeal denied,* 548 Pa. 647, 695 A.2d 785 (1997) (contraband must be immediately apparent from officer's pat-down for plain feel doctrine to apply).

Here, during his frisk of R.A. for weapons, Trooper Oberdorf felt what he recognized to be a cigar and a pill bottle. There is no dispute that pill bottles and cigars are legal items with legal purposes. As Judge Johnson observed in his dissenting opinion:

> ... cigars, cigarettes, and pill bottles are not by their very nature contraband. To acquire that designation, they must be filled with some illegal substance. However, one cannot make that determination solely through feeling the object. The cigar could be filled with tobacco; the bottle could be filled with prescription medication or candy.

Slip Op., No. 696 (Pa.Super., June 10, 1998) (Johnson, J., dissenting); *see also Commonwealth v. E.M./Hall*, 558 Pa. 16, 735 A.2d at 664 n. 9 (even if officer recognized bulge in defendant's pocket as cash, cash is not *per se* contraband and therefore, not immediately apparent as contraband so as to justify seizure of cash under plain feel doctrine).

■ Because neither a cigar nor a pill bottle is by its nature contraband, and because the incriminating contents of the objects were detected only after the trooper seized and inspected the cigar and pill bottle by sight, we agree with R.A. that the immediately apparent requirement of the plain feel doctrine has not been satisfied. *See Dickerson*, 508 U.S. at 377–78, 113 S.Ct. at 2138–39 (when officer felt small hard object wrapped in plastic and determined it was crack cocaine only after conducting further search, i.e. squeezing and manipulating object, seizure of object was not justified by plain feel doctrine).[4] Accordingly, the drugs recovered from R.A.'s jacket must be suppressed.

4. The *Dickerson* Court also observed that the plain feel doctrine has an "obvious application by analogy" to the plain view exception to the warrant requirement. *Dickerson*, 508 U.S. at 375, 113 S.Ct. at 2134. In defining "immediately apparent" for purposes of the plain feel doctrine, *Dickerson* cited to *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), for the proposition that where police lack probable cause to believe that the object in plain view is contraband without conducting some further search, the plain view doctrine cannot justify its seizure. Clearly, as R.A. observes in his brief, if R.A. had been walking down the street visibly displaying a pill bottle and a cigar, with nothing incriminating about the containers in sight, an officer

■ For similar reasons, we find that Officer Birney did not have probable cause under the plain feel doctrine to seize the drugs from Appellant Reuben Stevenson's pants pocket. At Stevenson's suppression hearing, Officer Birney testified that during the frisk of Stevenson, he felt three hard packages of folded paper or cardboard in the change pocket of Stevenson's jeans. Although the officer testified that he had previously seen cocaine packaged in cardboard [5] and that he "knew" the packages contained cocaine "by the feel of the bulge and the package," N.T., 4/1/96, at 103, he did not explain what it was about the mass or contour of the particular package felt that led him to this conclusion. In fact, while the officer testified that he did not believe that the packages were gum or candy, he also conceded that he did not know if non-contraband items would feel similar to the cardboard that he felt during the frisk of Stevenson. *Id.* at 105–06, 113 S.Ct. 2130.

This Court recently stated in *Commonwealth v. E.M./Hall* that "in order to remain within the boundaries delineated by *Dickerson,* an officer must be able to substantiate what it was about the tactile impression of the object that made it immediately apparent to him that he was feeling contraband." *E.M./Hall,* 558 Pa. 16, 735 A.2d at 664 n. 8. Since Officer Birney offered only vague assertions that he somehow "knew" the cardboard was drugs based on "the feel of the bulge," the record does not support a finding that it was immediately

would be unauthorized in seizing those items under the plain view exception to the warrant requirement. *See Commonwealth v. Phillips,* 225 Pa.Super. 126, 310 A.2d 290, 291 (1973) (officer's mere observation of ornate smoking pipe in defendant's car did not provide probable cause for seizure of pipe under plain view doctrine because such pipes are not illegal *per se* in that they can be used to smoke either legal or illegal substances). Likewise, Trooper Oberdorf was unauthorized in seizing the cigar and pill bottle under the plain feel doctrine since their criminal nature was not immediately apparent to him upon feeling those items during the pat-down search for weapons.

5. Specifically, Officer Birney testified that he had previously seen controlled substances packaged in cardboard during drug arrests that he had made and witnessed as well as during controlled drug buys in which he had participated. N/T/, 4/1/96, at 34–37. Officer Birney did not, however, relate how this experience allowed him to immediately determine that the cardboard felt in Stevenson's pocket contained narcotics, as opposed to something legitimate.

apparent to the officer that the cardboard felt in Stevenson's pocket was contraband. *See E.M./Hall,* 735 A.2d at 664 (for plain feel doctrine to be applicable, officer must do more than testify as to his general suspicion that bulge felt in defendant's pocket was contraband and offer, as substantiation, that mass of bulge was soft); *Commonwealth v. Mesa,* 453 Pa.Super. 147, 683 A.2d 643, 648 (1996) (detective's general testimony that he immediately knew bulge felt in suspect's pocket contained cocaine due to the "shape and form it was in" did not support finding that detective immediately recognized object as contraband). Rather, the record shows that Officer Birney, like the officer in *In the Interest of R.A.,* merely felt material which may or may not be used for packaging controlled substances.[6] As discussed above in *R.A.,* this is insufficient to meet the requirements of the plain feel doctrine. *See Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137; *Stackfield,* 651 A.2d at 562.

We note that, like the lower courts in *R.A.,* the lower courts in the instant case also found that because Officer Birney had previously seen drugs packaged in cardboard, it was immediately apparent to him that the cardboard felt in Stevenson's pocket was contraband. For the reasons outlined in *R.A.,* we reject this finding as a misinterpretation of the immediately apparent requirement as defined by *Dickerson.* We also note that officers experienced in drug enforcement have, more likely than not, seen drugs packaged in all kinds of material, ranging from cardboard to tic-tac containers to pill bottles to film canisters. The mere fact that an officer has seen others use an object to package drugs, however, does not mean that once the officer feels that object during a pat-down search of a different individual, he automatically acquires probable cause to seize the object under the plain feel doctrine as something that is "immediately apparent" as contraband. *See Commonwealth v. Pinno,* 433 Pa. 1, 248 A.2d 26 (1968) (even strong reason to suspect will not adequately substitute for probable

**6.** Obviously, cardboard or folded paper may be in an individual's pocket for any number of legitimate reasons, and may contain, if anything at all, any number of legitimate items.

cause as grounds for search and seizure). In fact, if we were to allow an officer to seize an object under such circumstances,

> we would in effect be ignoring the admonition of the Supreme Court in *Dickerson* that "where, as here, 'an officer who is executing a valid search for one item seizes a different item,' this Court rightly 'has been sensitive to the danger ... that officers will enlarge a specific authorization, furnished by a warrant or an exigency, into the equivalent of a general warrant to rummage and seize at will.'" *Dickerson*, 508 U.S. at 378, 113 S.Ct. at 2138, (quoting *Texas v. Brown*, 460 U.S. 730, 748, 103 S.Ct. 1535, 1546, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring in judgment)).

*E.M./Hall*, 558 Pa. 16, 735 A.2d at 664 n. 8.

█ Because the pat-down of Stevenson failed to establish probable cause to believe Stevenson was carrying identifiable contraband, the subsequent search of the trunk of the car driven by Stevenson, which resulted in the discovery of additional cocaine, was likewise unconstitutional. *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (if evidence is recovered as a result of exploitation of primary illegality, evidence must be suppressed as fruit of poisonous tree); *E.M./Hall*, 558 Pa. 16, 735 A.2d at 664 n. 8 (since officer did not have probable cause under plain feel doctrine to search defendant's pocket and seize an object not immediately apparent as contraband, additional contraband recovered during subsequent search was suppressed as fruit of illegal search). Thus, the drugs recovered from Stevenson's person as well as from the trunk of the car must be suppressed.

For the reasons outlined above, we find that the lower courts erred in denying Appellant R.A.'s and Appellant Stevenson's suppression motions. Accordingly, the Orders of the Superior Court are reversed.

Justice CASTILLE files a dissenting opinion.

Justice NEWMAN files a concurring and dissenting opinion.

NEWMAN, Justice, concurring and dissenting.

While I agree with the majority that the evidence seized from R.A. was seized illegally and must be suppressed, I respectfully disagree with the majority's conclusion that the evidence seized from Appellant Stevenson is likewise subject to suppression.

In 1993, the United States Supreme Court decided the case of *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) and adopted the "plain feel" doctrine. Earlier this year this Court applied *Dickerson* in *Commonwealth v. E.M.* 558 Pa. 16, 735 A.2d 654 (1999), reiterating that, in order for the plain feel doctrine to apply, the criminal nature of the object must be "immediately apparent" to the officer conducting the frisk. In a footnote, the majority elaborated on this requirement stating that: "In order to remain within the boundaries delineated by *Dickerson*, an officer must be able to substantiate what it was about the tactile impression of the object that made it immediately apparent to him that he was feeling contraband." *Id.*, 735 A.2d at 664 n. 8. In my opinion, that is precisely what occurred in Appellant Stevenson's case. Accordingly, I agree with Justice Castille that the evidence seized was admissible under the plain feel doctrine.

CASTILLE, Justice, dissenting.

I respectfully dissent. The United States Supreme Court set forth the parameters of a proper search under the plain feel doctrine in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). To interpret the issue as the majority does effectively renders the plain feel doctrine a nullity. *See Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654 (1999) (discussing plain feel under the United States Constitution).[1]

1. A plurality of this Court in *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075 (1998) (opinion announcing judgment of the court) would have adopted plain feel under *Dickerson*. However, since neither party argues that the state constitution provides greater protection

Essentially, a police officer, when conducting a valid *Terry* [2] stop and frisk, may seize items that are not weapons if, when patting down a suspect's outer clothing, the officer feels an object whose contour or mass makes its identity immediately apparent as contraband.[3] When such situation occurs, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons. If the object is contraband, its warrantless seizure is justified by the same practical considerations that exist under the plain view doctrine. *Dickerson, supra* at 375–76, 113 S.Ct. 2130.

As the majority states, an officer may seize non-threatening contraband detected by plain feel during a pat-down search for weapons if: 1) the officer is lawfully in a position to detect the presence of contraband and 2) the incriminating nature of the contraband is immediately apparent and the officer has a lawful right of access to the object. *See Dickerson, supra; E.M., supra.* Neither appellant disputes that the officers in both cases *sub judice* met the first prong. To satisfy the second prong of the test, an officer must be able to substantiate what it is about the tactile impression of the object that made it immediately apparent to him that he was feeling contraband. *E.M., supra.*

The majority suggests that an officer's testimony falls short of *Dickerson* if the officer does not know whether non-contraband items would feel similar to the contraband seized. Thus, the majority would require that an officer identify crack cocaine or marijuana to the exclusion of any other item. That

than the federal constitution, we need not address whether the state constitution was implicated.

2. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, the officer may conduct a pat-down search to determine whether the person is in fact carrying a weapon).

3. While the Supreme Court did not define "immediately apparent," the Court noted that Dickerson's search exceeded the lawful bounds marked by *Terry* because the officer identified the contraband after "squeezing, sliding and otherwise manipulating the object." *Dickerson, supra* at 377, 113 S.Ct. 2130.

is an impossible request. Interpreting the plain feel doctrine to require identifying a substance to the exclusion of any other would leave no grist for the mill. Absent x-ray vision, and being a mere mortal, an officer can only rely on his experience when determining whether a concealed item gives the immediate impression of contraband.

The Court must look at the totality of the circumstances and allow an officer to rely on his experience when interpreting tactile sensations to identify the object felt. *See Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d. 993 (1999) (stating that to judge whether incriminating nature of an object was immediately apparent to police officer, reviewing courts must consider totality of the circumstances). In the instant cases, it was immediately apparent under the totality of the circumstances that the appellants carried contraband.

*COMMONWEALTH v. STEVENSON*

On the evening of October 17, 1995, Officer Robert Birney of the Parkside Borough Police Department saw appellant, Reuben Stevenson, park a vehicle at a townhouse complex and enter a residence known for illegal drug activity. The officer continued on his patrol and, about two minutes later, saw appellant return to the vehicle and exit the complex. Officer Birney observed that the vehicle had a broken rear taillight and signaled for appellant to pull over. Appellant complied; however, during the stop, appellant appeared nervous, began to fidget and repeatedly reached toward the glove compartment of the vehicle. The officer, fearing for his safety, ordered appellant out of the vehicle and conducted a pat-down search. It was during this search that the officer felt three hard packages of folded paper or cardboard in appellant's pocket. The officer stated that he knew, based on his experience, that the packages contained crack cocaine. The officer retrieved the packages, confirmed that the packages contained crack cocaine and placed appellant under arrest. A subsequent search of appellant's trunk revealed more cocaine.

The majority states that the officer failed to relate what led him to believe that appellant had contraband in his pocket. In

doing so, the majority fails to consider the totality of the circumstances or take into account the officer's experience. The officer saw appellant go into a known crack house and come back out in a very short period of time.[4] During the subsequent traffic stop, appellant acted suspiciously. The officer conducted a proper *Terry* frisk and immediately recognized the three hard packages in appellant's pocket as contraband.

Officer Birney had over seven years experience as a law enforcement officer. He testified that he had personally made 50 drug arrests and had assisted on hundreds of others. He stated that, when he felt the small change pocket on Stevenson's jeans, indicating the small pocket above the front right pocket, he knew it contained narcotics. He testified that he had previously seen and felt controlled substances packaged in cardboard during drug arrests that he had made and witnessed. He also testified that he had purchased drugs in similar packaging while working undercover. N.T. 4/1/96 at 31–34.

It is clear that, under the totality of these circumstances and due to his experience, it was immediately apparent to Officer Birney that the items in appellant's pocket were contraband. *See Commonwealth v. Evans*, 546 Pa. 417, 685 A.2d 535 (1996) (holding that, under the plain view doctrine, police officer's belief that package he observed protruding from under seat of defendant's automobile contained narcotics, based on his prior police experience involving observations of narcotics being similarly packaged, together with defendant's suspicious behavior during traffic stop, gave officer probable cause to arrest defendant). Therefore, the evidence should be admitted under the plain feel doctrine.

## IN THE INTEREST OF R.A.

Pennsylvania State Trooper Jerry Oberdorf testified that on February 27, 1997, at approximately 12:40 a.m., he observed a

---

**4.** At the suppression hearing Officer Birney stated that he knew the townhouse that Stevenson entered well, including the names and work schedules of the residents. He had also taken previous complaints concerning heavy pedestrian traffic, during the night, to the house. N.T. 4/1/96 at 10–11.

car with a cracked windshield proceeding ahead of his patrol car. The car contained three occupants including appellant R.A., who was in the back seat. Trooper Oberdorf signaled for the car to pull over and the driver complied. After coming to a complete stop, the driver jumped out of the car and began to move away from it. Trooper Oberdorf ordered the driver back to the vehicle and noticed that the driver appeared nervous and was speaking incoherently. The trooper ordered the driver to stay put and patted him down. He found no weapons or contraband.

While conducting the pat-down, Trooper Oberdorf ordered the remaining passengers to place their hands so he could see them. Initially, the passengers complied, but then they began to fidget and move their hands around the inside of the vehicle. Trooper Oberdorf then ordered the passengers out of the vehicle. Appellant complied but appeared nervous and continued to move his hands about his jacket. Based on these actions, Trooper Oberdorf patted down appellant. During the pat-down, Trooper Oberdorf felt what seemed to be a cigarette or a cigar and something similar to a pill bottle in the liner of appellant's jacket. Trooper Oberdorf immediately concluded that the items contained contraband. Accordingly, the trooper removed the objects and found a hollowed-out cigar filled with marijuana and a pill bottle that contained crack cocaine. Trooper Oberdorf then placed appellant under arrest.

Although neither a cigar nor a pill bottle by its nature constitutes contraband, under the totality of these circumstances, it is clear that Trooper Oberdorf had probable cause to believe that the liner in appellant's jacket contained contraband. *Commonwealth v. Kendrick,* 340 Pa.Super. 563, 490 A.2d 923 (1985) (holding that film container has other uses and therefore is not purely single-purpose container; however, given circumstances, trained narcotics detective's view of container was tantamount to view of narcotic itself). Trooper Oberdorf testified that he had over six years experience as a State Trooper and that he had cadet training in the detection of drugs and the different ways it is packaged and carried.

He further testified that he had made over one hundred drug arrests, and that he had previously seen cocaine packaged in a pill bottle and a marijuana cigar, sometimes referred to as a "Phillie blunt." N.T. 6/11/97 at 10. Even the trial court noted that, "everybody knows in this room that cigars are what they use as blunts." N.T. 6/11/97 at 18. Thus, based on his experience and under the totality of the circumstances, it was immediately apparent to the trooper that the items in the liner of R.A.'s jacket were contraband.

The majority fails to examine the totality of the circumstances and discounts the trooper's experience. Instead, the majority focuses on the fact that, when asked whether he had felt any narcotics or any other objects that he could identify as contraband, the trooper responded in the negative. However, the record reflects that Trooper Oberdorf was asked whether he felt any *other* narcotics or any other objects that he could identify as contraband. N.T. 6/11/97 at 16. Thus, Trooper Oberdorf did not testify that he did not feel any items that he could identify as contraband.

The majority's interpretation of "immediately apparent" would require absolute certainty on the part of the officer, requiring him to identify an item as contraband to the exclusion of any other possibility. If that were the relevant standard, the police would never have probable cause to seize a white powdery substance that they believed, under the totality of the circumstances, was cocaine because the possibility always exists that the substance could be flour, powdered sugar, or any other similar lawful substance. However, that is not the standard set forth in *Dickerson*. Rather, *Dickerson* only requires that the item *appear* to be contraband.

Because I believe that under the totality of the circumstances it was immediately apparent to the investigating officers in both cases that the items felt in the *Terry* frisks were contraband, I would hold that the contraband found by the officers should not be suppressed. Therefore, I dissent.